No. 25-20132

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

Clifford F. Tuttle, Jr., as Representative of the Estate of Dennis W. Tuttle, Deceased; Robert Tuttle; Ryan Tuttle; Jo Ann Nicholas; John Nicholas,

            **Plaintiffs-Appellees**,

v.

Felipe Gallegos,

            **Defendant-Appellant.**

_____

Jo Ann Nicholas, individually and as an heir of the Estate of Rhogena Nicholas; John Nicholas, as temporary administrator of the Estate of Rhogena Nicholas,

            **Plaintiffs-Appellees**,

v.

Felipe Gallegos,

           **Defendant-Appellant**.

_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Honorable Alfred H. Bennett, District Judge
Nos. 4:21-cv-270 and 4:21-cv-272

_____

**REPLY BRIEF OF APPELLANT FELIPE GALLEGOS**

_____

            RUSSELL HARDIN, JR.
            JOHN MACVANE
            RUSTY HARDIN & ASSOCIATES, L.L.P.
            5 Houston Center
            1401 McKinney Street, Suite 2250
            Houston, Texas 77010
            (713) 652-9000 Phone
            RHardin@RustyHardin.com
            JMacVane@RustyHardin.com

            *Counsel for Defendant-Appellant*

**TABLE OF CONTENTS**

Contents                                                                                                                  Page(s)

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

ARGUMENT ................................................................................................................... 1

I.   This Court should reverse the denial of summary judgment as to Ms. Nicholas both because (A) under *Scott v. Harris*, the Plaintiff's version of events so blatantly contradicts the record that no reasonable jury could believe it and (B) even under Plaintiffs' version of events Officer Gallegos's use of force was justified given the threat that Mr. Tuttle posed. ...........................................................................2

   A.   The Plaintiff's fail to even cite *Scott v. Harris*—let alone meaningfully address Officer Gallegos's argument that the Plaintiffs' version of events must be rejected as blatantly contradicted by video evidence under *Scott*, and this Court should therefore reject the Plaintiffs' version of events under *Scott*. ...............................................................................3

   B.   This Court should consider Officer Gallegos's argument that he justifiably fired the shot that killed Ms. Nicholas in response to Mr. Tuttle's shooting of Officer Lovings because (1) Officer Gallegos expressly raised this argument in his summary judgment motion and (2) even if he did not, this Court should address it as a purely legal issue, the ignoring of which would result in a miscarriage of justice. ...................................................................6

      1.   Officer Gallegos explicitly argued in the trial court that "if Officer Gallegos did intend to shoot Tuttle [when he shot Ms. Nicholas], he was justified in doing so because Tuttle had already shot two officers and continued to point his gun at other officers." ...........7

    2. Even if Gallegos failed to raise this argument in the trial court—which he did not—this Court should address the issue because "it is a purely legal matter and failure to consider [it] will result in a miscarriage of justice." ..................................................................10

II. The final two shots at Mr. Tuttle were objectively reasonable, and Mr. Tuttle has still failed to identify a case that bears a remote factual resemblance to the intense threat that Mr. Tuttle posed. ..............................................................................12

CONCLUSION ........................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................ 15

CERTIFICATE OF COMPLIANCE ....................................................................... 16

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………….……**Pages(s)**

*Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015)…………………………….4

*Graham v. Connor*, 490 U.S. 386, 396–97 (1989)…………………..………….*passim*

*Jimerson v. Lewis*, 94 F.4th 423 (5th Cir. 2024)……………………………………10

*Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996)………………………………………9

*Malbrough v. Stelly*, 814 Fed. Appx. 798, 806 (5th Cir. 2020)…………………………13

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)………………………………………11

*Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014)………………………………12, 14

*Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021) ………………………3, 4

*Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021)……………...2, 3, 7, 10-12

*Scott v. Harris*, 550 U.S. 372 (2007)………………………………………...1-6, 9, 10

# ARGUMENT

The Plaintiffs' brief ignores—and implicitly concedes—vital points about the district court's errors in denying Officer Gallegos's motion for summary judgment against both Mr. Tuttle and Ms. Nicholas.

With respect to Ms. Nicholas, the Plaintiff's fail to even cite—let alone discuss—*Scott v. Harris*, which plainly permits this Court to reject the Plaintiffs' version of the facts because the Plaintiffs' version is "blatantly contradicted by the record, so that no reasonable jury could believe it." *See Scott v. Harris*, 550 U.S. 372 (2007). And not only do the Plaintiffs fail to discuss *Scott*, they fail to dispute Officer Gallegos's lengthy and detailed argument that the video evidence directly contradicts the Plaintiff's version of events, permitting a factual analysis under *Scott*.

In addition, contrary to the Plaintiffs' contention, Officer Gallegos expressly argued in the trial court that, even under the Plaintiffs' theory, the fatal shot to Ms. Nicholas was justified because the shot also hit Mr. Tuttle, who at the time was armed and shooting at police officers.[1] The Plaintiffs' argument that this issue was forfeited is thus incorrect. Alternatively, to the extent this issue was not raised in the trial court—which it certainly was—this Court should nonetheless address the issue because "it is a purely legal matter and failure to consider [it] will result in a miscarriage of justice." *See*

---

[1] *See* ROA.8993 (stating that "if Officer Gallegos did intend to shoot Tuttle [when he shot Ms. Nicholas], he was justified in doing so because Tuttle had already shot two officers and continued to point his gun at other officers.").

1

*Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) (discussing circumstances when this Court can address arguments not raised in the trial court).

With respect to Mr. Tuttle, the Plaintiffs continue to fail to identify any authority that remotely factually resembles the level of danger and lethality demonstrated by Mr. Tuttle to overcome qualified immunity, so the trial court's judgment with regard to Mr. Tuttle should be reversed as well.

I. **This Court should reverse the denial of summary judgment as to Ms. Nicholas both because (A) under** *Scott v. Harris***, the Plaintiff's version of events so blatantly contradicts the record that no reasonable jury could believe it and (B) even under Plaintiffs' version of events Officer Gallegos's use of force was justified given the threat that Mr. Tuttle posed.**

As discussed below, the Plaintiffs largely fail to address the argument the video evidence so blatantly contradicts the Plaintiffs' version of events that no reasonable jury could believe it under *Scott v. Harris*.

In addition, Officer Gallegos plainly raised in the trial court his argument that "if Officer Gallegos did intend to shoot Tuttle [when he shot Ms. Nicholas], he was justified in doing so because Tuttle had already shot two officers and continued to point his gun at other officers."[2] This is the same argument that Gallegos raised in this Court, and the argument is therefore not forfeited. Alternatively, even if Officer Gallegos had failed to raise this argument in the trial court (which he did not), this Court should

---

[2] ROA.8993.

nonetheless address it address the issue because "it is a purely legal matter and failure to consider [it] will result in a miscarriage of justice." *See, e.g.*, *Rollins*, 8 F.4th at 398.

>   **A.     The Plaintiff's fail to even cite *Scott v. Harris*—let alone meaningfully address Officer Gallegos's argument that the Plaintiffs' version of events must be rejected as blatantly contradicted by video evidence under *Scott*, and this Court should therefore reject the Plaintiffs' version of events under *Scott*.**

Officer Gallegos's principal brief focused extensively on the *Scott v. Harris* exception to the general rule that, in qualified immunity summary judgment appeals, the Court must adopt the Plaintiffs' version of events.[3] Specifically, Gallegos pointed out that, while generally this Court must limit its review to "whether the factual disputes identified by the district court are material to the denial of qualified immunity—that is, whether the factual disputes viewed in favor of the plaintiff make out a violation of clearly established law,"[4] an exception to this limit exists. That is, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott*, 550 U.S. at 380.

---

[3] *See, e.g.*, Gallegos Brief, Dkt. 35, at 18-19, 25-33.

[4] *See* Gallegos Brief, Dkt. 35, at 32 (quoting *Poole v. City of Shreveport*, 13 F.4th 402, 423 (5th Cir. 2021)).

3

Relying upon *Scott*, Gallegos argued that the district court erred in adopting the Plaintiffs' version of events because video evidence blatantly contradicted this version.[5] Specifically, the person who the Plaintiffs' version contended was Gallegos could not have been Gallegos because video evidence blatantly demonstrated that the Plaintiffs' "Gallegos" in the video did not have the sleeve of real tattoos present on the real Gallegos.[6]

Three points about the Plaintiffs' response to these arguments under *Scott v. Harris* warrant emphasis and specific reply:[7]

***First***, without citation to authority, the Plaintiffs contend that this Court lacks jurisdiction to review Officer Gallegos's claim that video and other evidence blatantly contradicts Plaintiffs' version of events. This is wrong, and this Court plainly has jurisdiction under the collateral order doctrine to review this question under *Scott v. Harris*. *See, e.g.*, *Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021) (noting that "an exception to" this Court's "general inability to review the existence of fact disputes" exists when video blatantly contradicts the Plaintiff's version) (citing *Scott*, 550 U.S. at 380-81; *Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015)).

---

[5] *See* Gallegos Brief, Dkt. 35, at 23-31.

[6] *See, e.g.*, Gallegos Brief, Dkt. 35, at 26-28 (including many pictures from the video demonstrating that person identified by Plaintiffs as Gallegos could not have been Gallegos).

[7] These points respond to the Appellees' Brief, Doc. No 46, at 33-42.

***Second***, the Plaintiffs do not appear dispute that the video evidence blatantly contradicts their contention that Gallegos was captured on video far away from the house when Medina escaped.[8] Indeed, despite Officer Gallegos's lengthy briefing explaining that the video evidence foreclosed this version of the facts, the Plaintiffs' never substantively responded to Gallegos's analysis of the video evidence. As a result, it does not appear to be in dispute that the Plaintiffs' version is blatantly contradicted by the video evidence.

***And third***, rather than disputing that the video evidence contradicts their theory, the Plaintiffs appear to argue that it does not matter where Gallegos was when Medina escaped the house. But this argument completely ignores both the Plaintiffs' arguments in the trial court, and the analysis upon which the trial court relied. Indeed, the first factor that the district court identified as creating a fact issue regarding whether Gallegos observed Medina in the house was the video that Plaintiffs contended showed Gallegos by the street.[9] The other factors identified by the Court are immaterial to whether Gallegos perceived Ms. Nicholas as a threat.[10] Thus the direct contradiction of

---

[8] *See* Appellees' Brief, Doc. No 46, at 33-42.

[9] *See* ROA.14174-75.

[10] *See* ROA.14175 (trial court's order identifying issues related to Gallegos's credibility and exactly where Ms. Nichoas was standing as contributing the fact issues precluding summary judgment); *see also* Gallegos Brief, Dkt. 35, at 40-41 (explaining that disputes about Nicholas's exact location do not foreclose summary judgment because under the objective circumstances established by the undisputed evidence, she nonetheless appeared to pose a threat).

the Plaintiffs' theory by the very video upon which they and the trial court relied requires reversal under *Scott v. Harris*.

For all of these reasons, the video evidence contradicts the Plaintiffs' version of events so blatantly that no reasonable jury could accept it, and the trial court therefore erred by denying Officer Gallegos's motion for summary judgment. *See Scott*, 550 U.S. at 380-81.

> **B. This Court should consider Officer Gallegos's argument that he justifiably fired the shot that killed Ms. Nicholas in response to Mr. Tuttle's shooting of Officer Lovings because (1) Officer Gallegos expressly raised this argument in his summary judgment motion and (2) even if he did not, this Court should address it as a purely legal issue, the ignoring of which would result in a miscarriage of justice.**

Officer Gallegos also argued in his principal brief that his use of force against Ms. Nicholas was objectively reasonable because, in the Plaintiffs' version of events, the bullet that struck Ms. Nicholas was aimed at—and hit—Mr. Tuttle.[11] Gallegos also pointed out that the Plaintiffs' focus on Gallegos's intent to shoot through Mr. Tuttle in order to "murder" Ms. Nicholas impermissibly turned the required objective inquiry into excessive force under *Graham v. Conner* into a subjective one.[12]

---

[11] *See* Gallegos Brief, Dkt. 35, at 40-41.

[12] *See* Gallegos Brief, Dkt. 35, at 40-41.

The Plaintiffs did not substantively respond to this argument, but instead claimed—without citation to the record—that Gallegos failed to raise it in the trial court.

As discussed below, Officer Gallegos expressly raised this argument in the trial court. And, alternatively, even if Gallegos had failed to raise this argument in the trial court, this Court should consider the argument because it raises a purely legal question and not considering it would result in a miscarriage of justice. *See, e.g.*, *Rollins*, 8 F.4th at 398.

> **1. Officer Gallegos explicitly argued in the trial court that "if Officer Gallegos did intend to shoot Tuttle [when he shot Ms. Nicholas], he was justified in doing so because Tuttle had already shot two officers and continued to point his gun at other officers."[13]**

In the trial court, Officer Gallegos took great pains to explain that, even if Ms. Nicholas was not reaching for Medina's gun, Gallegos did not violate her rights by hitting her with a bullet fired at the armed and dangerous Tuttle.[14] Gallegos made this argument in response to the conclusion of the Plaintiffs' scene reconstructionist that Gallegos aimed at Tuttle when he hit Nicholas.[15] In the trial court, Gallegos argued the

---

[13] ROA.8993.

[14] ROA.8993-94.

[15] *See* ROA.8993-94.

7

shot that killed Ms. Nicholas was "justified," *i.e.*, objectively reasonable, when fired to stop Tuttle's continued firing at police officers.[16]

This was consistent with Gallegos's focus throughout his summary judgment briefing on the well-established "objective reasonableness" standard in excessive force cases.[17]

Officer Gallegos's briefing to this Court added essentially nothing to this argument. In this Court, Gallegos simply pointed out that the Plaintiffs' theory of Gallegos shooting through the armed bad guy at the door intending to "murder" the innocent lady on the couch, not only made absolutely no sense, but also totally abandoned the required objective test.[18]

This was not a new argument that Gallegos raised for the first time on appeal. It was simply a restatement of the argument in the trial court that the objectively reasonable shot at Tuttle did not become unconstitutional by virtue of the bullet also hitting Nicholas. To be sure, Gallegos's appellate brief also emphasized that the Plaintiffs' argument violated the well-established rule that "[a]n officer's evil intentions

---

[16] *See* ROA.8993-95 (arguing among other things that "if Gallegos did intent to shoot Tuttle, he was justified in doing so because Tuttle had already shot two officers and continued to point his gun at other officers").

[17] *See, e.g.*, ROA.8977 (citing *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) for the proposition that force must be "objectively unreasonable"); ROA.8990 (quoting *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 463 (5th Cir. 2022) for the proposition that the inquiry "is judged from the perspective of a reasonable officer on the scene" (cleaned up)).

[18] *See* Gallegos Brief, Dkt. 35, at 41-44.

will not make a Fourth Amendment violation out of an objectively reasonable use of force." *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989).[19] But this aspect of the argument was implicit in Gallegos's significant argument to the trial court that the shot striking Nicholas was objectively reasonable to the extent Gallegos aimed at Tuttle. It also cannot be reasonably disputed that Gallegos fired in Tuttle's direction when he hit Nicholas because Plaintiffs' version of events—which this Court is required to accept given the posture of this appeal[20]—is that Gallegos *actually hit Tuttle* with the shot that killed Nicholas.[21]

Put simply, Officer Gallegos plainly raised the argument in the trial court that Gallegos reasonably shot at Tuttle when he hit Nicholas in a manner that "[p]lace[d] the opposing party and the [trial] court on notice that [this] issue [wa]s being raised." *See Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996). As a result, Officer Gallegos did not waive this argument by failing to present it in the trial court and this Court should consider it. *See id.*

---

[19] *See* Gallegos Brief, Dkt. 35, at 41 (quoting *Graham*, 490 U.S. at 397).

[20] *See, e.g.*, *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir. 2000) ("Even where, as here, the district court has determined that there are genuine disputes raised by the evidence, we assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under these circumstances."). This requirement, of course, is subject to the exception under *Scott v. Harris* discussed above.

[21] *See* Appellees' Brief, Doc. No 46, at 11 (contending that "[a]s Gallegos intentionally and knowingly shoots the unarmed Nicholas, the fatal bullet grazes Tuttle who had approached the front of the house.").

**2. Even if Gallegos failed to raise this argument in the trial court—which he did not—this Court should address the issue because "it is a purely legal matter and failure to consider [it] will result in a miscarriage of justice."[22]**

Alternatively, even if Officer Gallegos had failed to raise the argument regarding the objective reasonableness of shooting at Mr. Tuttle in the trial court, this Court should nonetheless consider the argument under the exception that allows this Court to consider arguments raised for the first time on appeal that address a purely legal matter when failing to do so will result in a miscarriage of justice. *See Rollins*, 8 F.4th at 398.

As an initial matter, there can be no dispute that the objective reasonableness of Officer Gallegos firing at Mr. Tuttle when he hit Ms. Nicholas is a purely legal question. Indeed, subject to the *Scott v. Harris* exception discussed above, this Court's review on this appeal is "limited to considering issues of law." *See, e.g.*, *Jimerson v. Lewis*, 94 F.4th 423 (5th Cir. 2024). And the objective reasonableness of the use of force under the Plaintiffs' version of events is a quintessentially legal issue that this Court can resolve in a qualified immunity appeal. *See id.*

This issue also deals solely with the well-established objective nature of the *Graham v. Connor* test and *Graham*'s admonition that that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of

---

[22] *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021).

10

force." *See Graham*, 490 U.S. at 396–97. This issue is straight forward and, particularly given the procedural posture of this case, presents a clean legal issue for the Court to resolve, that is: given that Officer Gallegos was objectively reasonable in shooting at Mr. Tuttle, can this shot become a constitutional violation by virtue of the Plaintiffs' *ipse dixit* assertion that Gallegos intentionally shot through Tuttle to "murder" the innocent Nicholas.[23] Because the issue is purely legal, this Court should address it under the exception in *Rollins*, 8 F.4th at 398.

In addition, failing to address this issue will result in a miscarriage of justice. Indeed, the entire purpose of this interlocutory appeal is that Officer Gallegos's qualified immunity from suit "is effectively lost if a case is erroneously permitted to go to trial." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To require Officer Gallegos to go through the enormous toll and expense of a trial when the Plaintiffs' version of events fails to establish a constitutional violation as a matter of law will make Officer Gallegos a loser even after he wins before a jury.

Finally, this is not a case where a litigant failed to raise an issue and attempts to construct a new argument from whole cloth on appeal. Indeed, as discussed above,

---

[23] *See also* Gallegos Brief, Dkt. 35, at 3 (presenting this issue as: "It has long been established that the constitutionality of an officer's use of force must be judged objectively, without regard to the officer's subjective intent. In this case, the Plaintiffs argued that an officer employed excessive force by firing in the direction of an armed assailant who shot another officer seconds earlier because—in firing at this assailant and grazing him with the bullet—the officer intended to hit a woman sitting on a couch behind the assailant. Did the district court err in adopting this argument that the officer's subjective intent, rather than his objective actions, determined whether his force was excessive?").

11

Officer Gallegos raised this exact issue in his motion for summary judgment.[24] And to the extent that Plaintiffs now contend that he did not, the Plaintiffs fail to distinguish what aspects of Gallegos's briefing on appeal differ from the argument he expressly presented to the trial court. To the extent this Court has discretion to reach this issue under the exception identified in *Rollins*, 8 F.4th at 398, and other cases, the fact that Officer Gallegos raised such a substantially similar issue in the trial court must weigh in favor of not finding the argument forfeited here.

\* \* \* \*

For these reasons, Officer Gallegos's argument that, under the Plaintiffs' version of events, he was objectively reasonable in shooting at Mr. Tuttle when he hit Ms. Nicholas should be addressed. The Plaintiffs do not substantively respond to this argument, and the argument—if addressed—would plainly appear to require reversal of the trial court's denial of summary judgment as to Ms. Nicholas.

**II.   The final two shots at Mr. Tuttle were objectively reasonable, and Mr. Tuttle has still failed to identify a case that bears a remote factual resemblance to the intense threat that Mr. Tuttle posed.**

"[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014). The Plaintiffs do not dispute—nor could

---

[24] *See* ROA.8993-95

they—that police were justified in shooting Mr. Tuttle seven times because he undisputably shot several times, paralyzing one officer.

The issue is whether from the objective perspective of Mr. Gallegos, who had just observed what appeared to be Mr. Tuttle shooting one officer in the neck and two in the face as he continued to crawl on the floor, was deadly force reasonable to finally subdue Mr. Tuttle. It is undisputed that Mr. Tuttle never clearly gave himself up. And generally, when a suspect poses "a severe threat to public safety"—as Mr. Tuttle indisputably did—Officers are entitled to continue using deadly force until the suspect clearly "g[ives] himself up." *See Malbrough v. Stelly*, 814 Fed. Appx. 798, 806 (5th Cir. 2020). That never happened in this case. To the contrary, Mr. Tuttle objectively appeared to pose a severe threat to public safety from the moment he began shooting at police officers until he died less than 90 seconds later.

The Plaintiffs analysis of the *Graham* factors not only ignores *Graham*'s requirement that the factors be viewed objectively from the officer's perspective, but blinks at reality.[25] From Officer Gallegos's objective perspective it appeared that Mr. Tuttle shot three officers—two of them in the face as attempted to rescue a fallen comrade who lay paralyzed at house's threshold with Mr. Tuttle standing over him.[26]

---

[25] *See* Appellees' Brief, Doc. No 46, at 48-50.

[26] *See* Gallegos Brief, Dkt. 35, at 50-53.

Gallegos had no way to know that the warrant on the house was not valid, and no reason to believe that Tuttle did not realize he was shooting at police.

This is not a case about someone destroying property with a bat-like object,[27] or running out of the house away from police with a gun,[28] or driving a car.[29] And, as pointed in Gallegos's principal brief the Plaintiffs have identified no case that remotely factually resembles the aggressive potential lethality demonstrated by Tuttle in this case, of his undisputed failure to give himself up.

As a result, the Plaintiffs have still failed to satisfy their burden to overcome qualified immunity, and the trial court's denial of summary judgment at to Mr. Tuttle should be reversed.

[*conclusion and signatures on following page . . . .*]

---

[27] *Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 626 (9th Cir. 2022).

[28] *See Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 323 (9th Cir. 1991).

[29] *Plumhoff*, 572 U.S. at 770; *see also Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 407–08 (5th Cir. 2009).

14

## CONCLUSION

For the foregoing reasons, Officer Gallegos respectfully requests that this Court reverse the trial court's denial of his motion for summary judgment.

SUBMITTED BY:

  /s/ *John MacVane*
RUSSELL HARDIN, JR.
JOHN MACVANE
RUSTY HARDIN & ASSOCIATES, L.L.P.
   1401 McKinney Street, Suite 2250
   5 Houston Center
   Houston, Texas 77010
(713) 652-9000 Phone
RHardin@RustyHardin.com
JMacVane@RustyHardin.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2025, the foregoing document was served on all counsel of record using the Court's electronic filing system

  /s/ *John MacVane*
John MacVane

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 3,550 words, according to the software's word count feature.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

3. This document has been prepared in a proportionally spaced typeface using Microsoft® Word for Office 365 in 14 point Garamond type style.

　　　　　　　　　　　　　　　　　　*/s/ John MacVane*
　　　　　　　　　　　　　　　　　　John MacVane