# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2026

Thomas B. Plunkett, III
Clerk

No. 25-20132

Clifford F. Tuttle, Jr., *as Representative of* the Estate of Dennis W. Tuttle, *Deceased*; Robert Tuttle; Ryan Tuttle; Jo Ann Nicholas; John Nicholas,

*Plaintiffs—Appellees*,

*versus*

Felipe Gallegos,

*Defendant—Appellant*,

---

Jo Ann Nicholas, *individually and as an heir of the Estate of Rhogena Nicholas*; John Nicholas, *as temporary administrator of* the Estate of Rhogena Nicholas,

*Plaintiffs—Appellees*,

*versus*

Felipe Gallegos,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:21-CV-270, 4:21-CV-272

---

## ON PETITION FOR REHEARING EN BANC

Before JONES, CLEMENT, and RICHMAN, *Circuit Judges*.

PER CURIAM:

The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (FED. R. APP. P. 40 and 5TH CIR. R. 40).

In the en banc poll, five judges voted in favor of rehearing, CHIEF JUDGE ELROD and JUDGES GRAVES, HIGGINSON, WILLETT, and DOUGLAS, and twelve voted against rehearing, JUDGES JONES, SMITH, STEWART, RICHMAN, SOUTHWICK, HAYNES, HO, DUNCAN, ENGELHARDT, OLDHAM, WILSON, and RAMIREZ.

James E. Graves, Jr., *Circuit Judge*, joined by Elrod, *Chief Circuit Judge*, and Higginson and Douglas *Circuit Judges,* dissenting from the denial of rehearing en banc:

This is an interlocutory qualified-immunity appeal arising from a botched no-knock warrant execution, in which Officer Gallegos shot and killed Dennis Tuttle and Rhogena Nicholas. To secure a warrant for the house, a narcotics supervisor falsely claimed that a confidential informant had bought heroin in the house. When officers—including Officers Frank Medina and Cedell Lovings—breached the house, a gunfight followed. In the ensuing chaos, both Tuttle and Nicholas were killed, and four officers were shot as well, leaving one paralyzed. Many of the wounded officers were shot by other officers. This appeal concerns one officer: Gallegos. The district court denied Gallegos' motion for summary judgment, reasoning he was not entitled to qualified immunity. The panel reversed, concluding that, given the context, deploying deadly force against one unarmed person and one incapacitated person was objectively reasonable.

I respectfully dissent.

## I. Nicholas

Plaintiffs allege that (1) Officer Medina was not present when Rhogena Nicholas was shot and (2) Gallegos intentionally shot her. Thus, under Plaintiffs' version of the facts, Gallegos shot and killed Nicholas without warning when she was unarmed and non-threatening.

Our jurisdiction is limited. At the summary judgment phase, the facts and conflicting evidence must be construed in the light most favorable to the nonmoving party. The court only reviews "whether the factual disputes that the district court identified are *material* to the application of qualified immunity." *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018). "We do not decide whether genuine fact disputes exist. . . . Instead, accepting the

plaintiffs' version of the facts, we consider only the legal question whether the defendants' actions were objectively unreasonable in light of clearly established law."[1] *Williams*, 41 F.4th at 422.

Using this standard, the district court's decision should be affirmed. As *Tennessee v. Garner* established, the use of deadly force is permitted only to protect the life of the shooting officer or others from serious physical harm. 471 U.S. 1, 11 (1985). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* Additionally, *Garner* requires a warning before deadly force is used "where feasible." *Id.* at 11–12. These principles have been repeatedly applied by this court. *See Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015).

Here, Plaintiffs' proffered version of the facts is as follows: Nicholas was the subject of a fraudulent no-knock warrant and shocked by the entrance of the officers. The first few officers to enter the home did not perceive her as a threat warranting deadly force.[2] She was unarmed, seated on a couch, and did not resist. She could not have been threatening Medina because Medina had already exited the home. Gallegos intentionally aimed at Nicholas and gave no warnings before he shot and killed her. Because Nicholas was non-threatening, the panel should have concluded that Gallegos was not entitled to qualified immunity.

---

[1] Of note, the panel considers at least three versions of the facts. However, as stated, we do not have jurisdiction to decide between these proffered versions of events. At this stage, the court must construe the evidence in the light most favorable to Plaintiffs.

[2] For example, Medina "attest[ed] that [he] didn't see the need for deadly force from what [he] perceived of [Nicholas'] behavior [before he was removed from the house] . . . that's why [he] did not use deadly force."

However, the panel makes the opposite conclusion, pointing to Nicholas' "actions." Specifically, the opinion focused on the dangerous environment and the fact that Lovings was still in the home. The panel then cites cases where deadly force was used on unarmed suspects who appeared to reach for a weapon and no constitutional violation was found. Based on these cases and the situation, the panel concludes Gallegos is entitled to qualified immunity.

What this reasoning lacks, nonetheless, is any supposed *action*[3] made by Nicholas that made her an immediate threat. Nicholas, again, was neither armed nor hovering over Medina, and there is no evidence that she made any movement towards Lovings. Instead, what the panel seems to perceive as a threat is her proximity to Lovings. However, that overextends *Garner*. Simply being near an officer does not justify the use of deadly force.

Because the law is clearly established that officers cannot use deadly force on a non-threatening suspect, the district court was correct. Gallegos is not entitled to qualified immunity as to this claim.

## II. Tuttle

---

[3] The cases the panel cites specifically turn on an action, usually "reaching." *See Manis v. Lawson*, 585 F.3d 839, 847 (5th Cir. 2009) (officer entitled to qualified immunity for shooting unarmed man who allegedly *reached* for something under front seat of his vehicle); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 381, 385 (5th Cir. 2009) (officer entitled to qualified immunity for shooting an unarmed man who *reached* into a boot for what the officers believed could be a weapon); *Reese v. Anderson*, 926 F.2d 494, 500–01 (5th Cir. 1991) (officer entitled to qualified immunity for shooting an unarmed man who *reached* down twice in his car after officers told him to raise his hands); *Young v. City of Killeen*, 775 F.2d 1349, 1351–53 (5th Cir. 1985) (officer entitled to qualified immunity for shooting an unarmed man who allegedly *reached* toward car floorboard). In contrast, because the panel must view the factual disputes in favor of Plaintiffs, the panel must assume that Medina was no longer in the home when Nicholas was shot. Because of that, there is no comparable alleged movement or action that Nicholas made at the time Gallegos shot her.

As to Tuttle, while I respect the panel's efforts to understand Gallegos' position at the time, I disagree with the panel's conclusion that there is no constitutional violation presented.

When considering the facts in the light most favorable to Plaintiffs, the following scene is before us: Tuttle sustained nine bullet wounds, and only the last two fatal shots by Gallegos are contested. Before the last two shots, Tuttle had sustained major injuries as reflected by the graphic photo evidence: a shot to his shoulder, a grazing wound on his right arm, a hole through his left arm, a hole through his left wrist, and the destruction of his right hand. Because of his injuries, Tuttle was not capable of holding a weapon in either hand. When Gallegos approached, Tuttle had his back to the door and was dropping to the ground. Gallegos shot Tuttle in the buttocks. Twenty seconds later, Tuttle raised his upper body by his elbows, and Gallegos shot Tuttle in the back of his head or neck, killing him.

This court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). However, we have simultaneously acknowledged that "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased," *Lytle v. Bexar Cnty.,* 560 F.3d 404, 413 (5th Cir. 2009), and deadly force is excessive and unreasonable "unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Romero*, 888 F.3d at 176 (quoting *Garner*, 471 U.S. at 11).

Though the panel dismisses it, *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268 (5th Cir. 2015) is instructive here. In *Mason*, an officer unleashed a dog on a suspect after seeing a gun. 806 F.3d at 273. Once the

dog attacked, the suspect's hand came in contact with the gun. *Id.* The officer then shot the suspect five times. *Id.* The suspect was incapacitated and face down on the ground when the officer stopped firing. *Id.* The officer then claimed the suspect moved his shoulder and elbow "as if he were about to spin over, pull out the gun, and start shooting," and the officer shot the suspect two more times. *Id.* at 274. Based on the facts, the court reasoned that "a reasonable jury could conclude that Mr. Mason lay incapacitated on the ground and did not move in a threatening manner before Faul fired the final two shots . . . [meaning] a reasonable jury could conclude that Mr. Mason objectively posed no immediate threat." *Id.* at 277.

The same result should obtain here. While the panel emphasizes the dangerous context and Gallegos' possible knowledge, that alone does not grant Gallegos qualified immunity according to our precedent. Like in *Mason*, with the evidence provided, "[a] reasonable jury could conclude that when [Gallegos] fired the final two shots, [Tuttle] would have appeared incapacitated to an objectively reasonable officer." *Id.* at 278. "Shooting a clearly incapacitated suspect is inconsistent with *Garner*'s command that deadly force is unconstitutional when a 'suspect poses no immediate threat to the officer and no threat to others.'" *Id.* (quoting *Garner*, 471 U.S. at 11). Thus, the panel erred in reversing the district court as to this claim.

* * *

At its core, qualified immunity seeks to "balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). However, the panel's opinion ignores that balance in favor of an absolute shield for officials over accountability where it is due.

This case involves disputed facts that are material, and a clearly established constitutional right has been violated on the facts alleged. *See Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010); *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021). Thus, this case should have proceeded to trial, and Officer Gallegos' actions should have been evaluated by a jury.

Respectfully, I dissent.